State v. Probert, 19 N. M. 13.

(No. 1565, April 28, 1914)
# STATE OF NEW MEXICO, Appellee, vs. A. CLARENCE PROBERT, Appellant.

## SYLLABUS BY THE COURT.

1. An indictment for embezzlement under Section 1122, C. L. 1897, in the exact language of the statute is sufficiently specific to require no amplification. It is only where the terms of a statute are so general as to require specification of detail in order to identify a given transaction with which it is sought to charge a defendant, that the allegations of an indictment must be expanded beyond the statutory terms. To allege that a person has fraudulently embezzled and converted to his own use the money of another, is to allege that he so did with intent to defraud. To do an act fraudulently is to do it with intent to cheat and defraud.

P. 16

2. A motion for a continuance which fails to allege that the affiant believes in the truth of the facts to be testified to by the absent witness, as required by Section 2986, C. L. 1897, is properly overruled.

P. 16

3. The title to money which is contracted to be deposited by the vendee to the credit of one tenant in common, is properly laid in such tenant in common, notwithstanding his co-tenant may be entitled to his share of the fund upon an accounting between them.

P. 17

4. Where a vendee covenants with a vendor to deposit in a bank to his credit a sum of money pending an investigation of title to the real estate, and attempts to perform his contract by drawing his check in favor of the bank for the amount, which check and the proceeds thereof are embezzled by the president of the bank, and are never so deposited, and where the check is not treated by the parties as a present deposit of the amount, the title to the check and the proceeds thereof remain the property of the drawer of the check, and an allegation of title to the funds in the vendor is not sustained. P. 21

Appeal from the District Court, Taos County. Thomas D. Leib, Presiding Judge. Reversed and Remanded.

A. C. VOORHEES, Raton, N. M., and F. T. CHEETHAM, Taos, N. M., for Appellant.

Necessary to Allege Criminal Intent. C. L. 1897, Sec. 1182; 5 N. M. 54.

Variance Between Indictment and Proof Fatal. Wharton on Crim. Law, 9th Ed., Sec. 1044, Note 6; 57 N. H. 245; Am. Rep. 69; 72 Pa. St. 60; 56 N. Y. 363; Greenleaf on Evidence, Par 279.

H. S. CLANCY, Santa Fe, N. M., for Appellee.

No Error in Denying Motion to Quash Indictment. 35 So. 1021; 33 So. 108; 12 So. 755; 68 Mo. 301; 1 S. W. 709; 65 Pac. 746; 48 Pac. 326; 37 S. E. 762; 46 N. E. 528; 22 N. E. 773; 6 So. 633; 60 S. W. 1081; 18 S. W. 1000; 47 Atl. 644; 46 N. Y. Sup. 970; 15 N. Y. Sup. 496; 15 Cyc. 511; 27 Pac. 818; 19 S. W. 717.

Indictment Substantially Charging Crime Sufficient. 110 Ill. 629; 66 Cal. 344; 5 Pac. Rep. 509; 22 Tex. App. 1; 2 S. W. Rep. 531; 118 Mass. 443; 98 Mo. 482; 11 S. W. Rep. 977; 2 Bish. Crom. Proc. 328; 25 Cal. 531; 57 Ga. 367; 6 McLean 466; 8 So. Rep. 317.

No Error in Denying Motion for Continuance. 3 N. M. 350.

No Error in Denying Motion to Direct Verdict. 33 So. 398.

No Error in Admitting Evidence Proof of Similar Offenses Committed by Defendant. 5 Ency. of Ev. 144; 5 Pac. 242; 76 Ga. 568; 28 N. W. 871; 64 N. W. 736; 1 Wigmore Ev., Sec. 329.

### OPINION OF THE COURT.

PARKER, J.—The appellant was indicted for the crime of embezzlement, under Section 1122, C. L. 1897, which is as follows:

"If any officer, agent, clerk or servant of any incorporated company, or if any clerk, agent, or servant of a private person, or of any co-partnership, except appren-

tices, and other persons under the age of sixteen years, shall embezzle or fraudulently convert to his own use, any money or property of another, which shall have come to his possession or shall be under his care, by virtue of such employment, he shall be deemed, by so doing, to have committed the crime of larceny."

The indictment charged that the appellant did "then and there unlawfully, feloniously and fraudulently embezzle and convert to the use of him, the said A. Clarence Probert, certain property then and there of and belonging to Roy A. Clifford, to-wit, the sum of Five Hundred Dollars, which said property had theretofore come into the possession of and was then and there under the care of him, the said A. Clarence Probert, by virtue of his, said A. Clarence Probert's employment as such officer, agent and servant of such corporation, said State Savings Bank, which said property aforesaid, to-wit, the sum of Five Hundred Dollars, being then and there of the goods and chattels of the said Roy A. Clifford, he, the said A. Clarence Probert, did then and there knowingly, wilfully, unlawfully and feloniously take, steal and carry away; contrary to the form of the statute," etc.

Appellant moved to quash the indictment upon several grounds, only one of which is presented here, viz: that the indictment fails to allege that the embezzlement was committed with intent to defraud the owner of the money. Counsel cites Territory vs. Heacock, 5 N. M. 54, as supporting their contention.

The indictment in that case was drawn under Section 1123, C. L. 1897, and the case is not, therefore, authority as to the proper interpretation of Section 1122. Section 1123 covers the crime of embezzlement by carriers of goods or property, and for that reason the defendant in the Heacock case was held not to be properly charged in the indictment, he being a justice of the peace, and having collected a fine which he failed to account for. The court, in the Heacock case, further pointed out that the indictment in that case was defective by reason of the fact that it contained no allegation as to how the defendant became entrusted with the money, with the embezzlement of which

he was charged. This part of the decision is entirely inapplicable to this case.

The indictment in this case charges the defendant with the alleged crime in the exact language of the statute, and the terms of the statute are sufficiently specific to require no amplification by the pleader. It is only where the terms of a statute are so general as to require specification of detail in order to identify a given transaction with which it is sought to charge a defendant, that the allegations of an indictment must be expanded beyond the statutory terms. 1 Bishop's New Cr. Proc., Secs. 623-630; 22 Cyc. 341.

The attorney general argues that embezzlement is a statutory offense, and that an allegation of intent to defraud is not required by the statute, to which we agree. But if it were required, it is contained in substance in the indictment. To allege that a person fraudulently embezzled and converted to his own use the money of another, is to allege that he so did with intent to defraud. To do an act fraudulently is to do it with intent to cheat and defraud. State vs. Noland, 19 S. W. 715.

The court overruled a motion for continuance based upon the absence from the jurisdiction of a witness. The affidavit in support of the motion fails to allege that the defendant believed in the truth of the facts to be testified to by the absent witness. This alone defeats the motion, under the terms of Section 2986, C. L. 1897. Kent vs. Favor, 3 N. M. 350.

The most important question in the case is raised by a motion for a directed verdict of acquittal. The motion was founded upon the proposition that there is a variance between the allegations and the proof as to the ownership of the property which was the subject of the embezzlement.

It appears that one Clifford and one Chase, of the first part, and one Woody of the second part, entered into a contract for the sale of what is called the Hilton Ranch; that Woody agreed to deposit to Clifford's credit in the State Savings Bank of Taos, the sum of $500, pending the examination of title of the property; that if the title was approved the balance of purchase price was to be

likewise deposited to Clifford's credit in the Taos Bank; if the title was disapproved the $500 was to be returned to Woody.

Woody drew his check on his bank at Tucumcari for $500, in favor of the Taos Bank, and delivered the same to the defendant, who was president of the latter bank. The evidence shows that this check was forwarded for collection, and in due time was collected and credited to the account of the Taos bank. The embezzlement by the defendant, if it was committed, consisted in placing this check to the credit of his own personal account in the Taos bank, which was overdrawn, on the day following its receipt by the bank, through him as its president. The indictment alleges ownership of the $500 in Clifford.

It is alleged that there is a fatal variance between the allegations and the proof because, first, if title to the money passed from Woody at all, it passed to Clifford and Chase jointly; and second, the title to the money remained in Woody until the conditions of the contract in regard to the approval of the abstract of title had been complied with.

The first proposition above stated, needs little discussion. It is true that it appears that Chase was the joint owner with Clifford of the subject matter of the contract, but it is likewise true that the contract provided for the deposit of the entire purchase price of the property to the credit of Clifford in the Taos bank. If Chase was entitled to receive any portion of this purchase price by reason of his joint ownership, it was a mere matter of contract between Clifford and Chase. The title to the money when paid would pass to Clifford, and if Chase was entitled to any portion of the same, Clifford simply owed him the money. After the money was paid to Clifford, if it was, the relation between Clifford and Chase would become that of trustee and beneficiary, giving to Chase the right to an accounting and recovery of his proportion of the fund. This relation between these two parties would not operate to transfer the legal title to Chase of his proportion of the fund.

The second proposition above stated, that the title to

the money remained in Woody, is more serious. The contract provided:

"The second party hereto agrees to deposit with the State Savings Bank of Taos, New Mexico, the sum of Five Hundred Dollars, to be placed to the credit of Roy A. Clifford, pending the examination of title to the said real estate; the said second party further agrees that the said deed and abstract shall be sent by the State Savings Bank of Taos, N. M., to the International Bank of Commerce at Tucumcari, N. M., for examination and approval, and if approved the said second party shall send to the State Savings Bank of Taos a draft of the said International Bank of Commerce of Tucumcari, for the sum of Twenty-eight Hundred Dollars, the balance of the purchase price of the said parcel of real estate, to be placed to the credit of the said Roy A. Clifford.

"In case of non-approval of abstract the said sum of Five Hundred Dollars shall be returned by the said State Savings Bank of Taos to B. M. Woody at Tucumcari, New Mexico."

After executing the contract, Clifford and Woody went to the Taos bank and left a copy of the contract with the defendant as its president. Woody attempted to carry out his contract with Clifford and drew his check on the Tucumcari bank in favor of the Taos bank for $500, and delivered the same to the defendant. The check was forwarded for collection and paid, but the amount was never credited by the bank to Clifford, nor did it obligate itself to pay him the same. Clifford testified in regard to the transaction as follows:

"Q. State to whose credit that check was to have been deposited?"

"A. It was to have been placed to my credit upon the acceptance of the deal."

Woody testified:

"Q. What was said there relative to this agreement?"

"A. Well, it was after business hours. We just left the agreement with Probert and he filled out a check for $500 on the International Bank of Tucumcari and I signed it and he placed the check in an envelope and was

to leave it there until the deeds were sent to Tucumcari bank."

"Q. Did you so instruct him?"

"A. Yes sir."

On cross-examination he testified:

"Q. Mr. Woody, what was the understanding between you and Mr. Probert at the time you left the check there as to what he should do with the $500 check?"

"A. He was to have the check cashed and hold the money until the trade was through."

There is no evidence that the Taos bank or the defendant specifically undertook or agreed with Clifford to do anything as his agent. The undertaking to him, if there was one, was implied. The undertaking on the part of the bank or the defendant was with Woody to take his check and hold it (Woody says on direct examination) until the abstract of title was examined, and, if approved, it was to be turned over to Clifford. On cross-examination he testified that the check was to be collected and the proceeds held pending the closing of the deal. If the transaction is to be viewed in the light of the contract, and what was actually done, and Woody's testimony on cross-examination, the check was received for collection as the agent of Woody, and the proceeds, when collected, were to be retained as a sort of earnest money, and in the nature of an escrow. But this latter was never done by the defendant or the bank. The transaction never proceeded that far, and neither the defendant nor the bank ever discharged the obligation of Woody by accepting the money in escrow under the terms of the contract, or depositing the same to Clifford's credit. The proceeds of the check were intercepted before they reached the destination intended by the parties. This took place the next day after the check was given, so far as any act of the defendant is concerned, by his placing the check to his own credit, and thereby paying his overdraft in the bank. In neither of the views of the transaction, above outlined, could the title to the proceeds of the check pass to Clifford. In the first place, under Section 189, of our Negotiable Instruments law, the giving of the check did not operate as an

assignment of the funds of the drawer, Woody. Section 189, Chapter 83, Laws of 1907. Until the check of Woody was actually presented to the Tucumcari bank, and paid out of his funds, no possession or control of his funds could by any possibility be obtained by either the Taos bank or the defendant, and, consequently, up to that time there could be no embezzlement of the same. If the defendant committed any act of embezzlement prior to the payment of the Woody check, he embezzled something other than the funds of Woody, and that something must have been the check itself, and not the funds. If, on the other hand, the transaction be treated as a deposit by Woody in the Taos bank upon the handing in of the check, the proceeds to be applied as directed by the contract, then the deposit was for collection and was specific, and the title to the proceeds remained in Woody until the purposes for which they were deposited had been carried out. 1 Morse on Banks and Banking, Section 185. Covey vs. Cannon, 149 S. W. 514.

The mere fact that Woody had contracted with Clifford to deposit the money to his credit and had employed the agency of the Taos bank or the defendant to accomplish that end, did not operate to pass the title to his money to Clifford. It was a mere contract to deposit, not a deposit, in escrow. Something more was required, viz: the money must be collected and there must be some undertaking on the part of the bank to Clifford to hold the money for him according to the terms of the contract. If the money itself had been handed in to the bank by Woody and Clifford, together with the contract, and the bank or the defendant had accepted it in accordance with the terms of the contract, then the charge of the embezzlement of the same as the property of Clifford might be perhaps maintained, he having a special ownership therein. In such case Woody might be held to be the agent of Clifford and the latter be held to be the real depositor, or the deposit to be joint. Mayer et al. vs. Bank, 51 Ga. 325.

In this connection it is to be noted that neither the bank nor the defendant received any written instructions as to the disposition of the so-called escrow. If the evi-

dence of Clifford is to control, .then the defendant embezzled the check and not the funds. He is not so charged.

Counsel on both sides consider the transaction as a deposit of the check for collection, and an embezzlement of the funds, and there is evidence to support this view. But, as we have seen, if the defendant embezzled money, it was Woody's money, and not Clifford's. He is not so charged.

It follows from the foregoing that there was a variance between the allegations and the proof as to the ownership of the funds, amounting to a failure of proof.

Other errors are assigned but need not be considered.

For the reasons stated, the judgment of the court below will be reversed, and the cause remanded with instructions to award a new trial, and it is so ordered.